Ms. Murphy, whenever you're ready, we'll hear from you. May it please the Court, I'm Anne Murphy and I'm representing the five immigration agents who've been sued in this case in their individual capacities. Your Honours, I have two issues that I need to address. The first is that no Bivens remedy is available to the plaintiffs in this case in light of the Supreme Court's recent decision in Abbasi. And the second is that the plaintiffs are in any event entitled to qualified immunity because the pleadings are insufficient to allege a constitutional violation against any one of them. Turning first to the availability of Bivens, Your Honour, this case creates a new context for Bivens, as the District Court, I think, correctly discerned. That's a very low threshold for whether a case is a new context, and the Court correctly held that this arrest and searches by immigration agents created a new context. When there's a new context, the Supreme Court has directed that we have to perform a special factors analysis in which we look to see whether any special factors bear on that particular new context and whether those factors would cancel hesitation by the Court in favor of action by Congress if a new damages remedy is to be created. And here there are at least three significant special factors which, taken together, would cancel hesitation by this Court. One of the major factors that's present in this case is these immigration agents were searching under authority of the Immigration and Nationality Act, and that's important here for two reasons. First of all, the INA is an exercise of a power specifically committed to Congress, Your Honour, the power of immigration, which has foreign policy and international relations overtones. And there are numerous cases there where the courts have held that where a power is particularly committed to Congress's expertise, for example, military affairs, national security affairs in Abbasi itself, then the Court should in particular defer to Congress's primacy in the area and let Congress create any remedy rather than creating one itself. Is that any different than the narcotics issue under which Bivens was decided? Yes, it is, Your Honour, significantly different. Explain how, please. Well, because obviously Congress has interest in the criminal law, but in the INA there's both a comprehensive scheme for providing remedies for people who are caught up in the immigration system. And as I say, the Immigration and Nationality Act implicates Congress's authority over foreign relations. Any time an immigration agent detains somebody and puts them into immigration proceedings, that's somebody who is from another country, assuming that they really need to be removed. That's a foreign relations policy thing, and to the extent that Congress wants or to the extent that there ought to be damages remedies, that's a policy decision that is for Congress to make. And I think that's what the Court in Abbasi was saying. Are the Bivens implications the same for citizen plaintiffs and non-citizen plaintiffs? Your Honour, in this case I think, yes, as you know, there is a citizen plaintiff because the overarching scheme, it's still present even if the particular plaintiff happens to be a citizen. And I just want to concentrate here that she was not on the specific constitutional violation or the specific plaintiff or defendant. The question is whether in this new context, whether this Court should decide or leave it to Congress to decide. I really want to emphasize here that the question before the Court is not the policy question of whether there should be a damages remedy. That's not the issue. It's whether Congress or the Court should do it. And in the context of the citizen plaintiff, Your Honour, there are, in the Immigration and Nationality Act, there is a statutory provision that provides that a citizen's claims can be raised in removal proceedings, and that's at 8 U.S.C. 1252b-5. So Congress, in crafting the Immigration and Nationality Act, actually considered the question of citizens being caught up in that system. So again, if Congress wanted to create damages remedies for citizens but not for aliens from other countries, it perhaps could have done that, and it didn't. And again, it's not a question whether a remedy should be available. It's who should decide whether the remedy is available or not. Another thing that seems very important in this case, Your Honour, is that this case really challenges an immigration policy. The agents, this goes a little to the qualified immunity point, but the agents are kind of fungible in plaintiff's view. It's like whichever one did it, it was unconstitutional. And in the first complaint... But whose responsibility is that? How is it even possible for plaintiffs in a situation like this who aren't told anything about what is happening to identify who is doing it? Well, Your Honour, there's no allegation that each of the defendants looked identical. And my clients have a right. They have qualified immunity from the suit unless... I don't quite understand the fact that they didn't look identical to address the question of how plaintiffs could identify them by name or otherwise if they were never to see them again. Are you suggesting that if perhaps the plaintiffs had been able to describe them by appearance, it would have made a difference? That's exactly right, and it would. And here's why. The agents are entitled to notice the claims against them or they're entitled to qualified immunity. Is that unclear, the nature of the claims against them? It's totally unclear, Your Honour. We don't even know which of the defendants was alleged to be present at either incident. Except for the identity, the conduct is fairly well spelled out under it voluntarily, wouldn't you say? I mean, I appreciate the argument about the identity, but aside from the identity, and we can debate whether they should have done more on that, the conduct itself, do you question that as well? But we don't know who did what. But that's not the question. Right. They do make allegations about what certain people did. The question is the conduct. The conduct is described in troubling detail, and it would seem at least arguable that the government would be in a far better position to determine who committed that conduct than the defendants who were taken into custody in their pajamas. Your Honour, I would just like to say I am not representing the government. I'm representing individuals. I understand that. I'm just trying to get the question answered, and the question is with respect to the conduct, not with respect to the identification. The conduct that took place is adequately alleged, I agree, under Iqbal and Twombly. The problem is, from my client's point of view, it's not even alleged. The district court said that the plaintiffs had adequately alleged that each of my clients was present at one or other of these incidents. We know that at least at the incident at the 14th Street South House, there were more than five people present. This is not a hypothetical case in which it's possible that, you know, perhaps a defendant might be entitled to qualified immunity at the pleading stage from some claims. I'm sorry, Ms. Murphy. No, no, please ask. Related to that issue, you said there are two issues before us, and I would respectfully ask maybe there's a third, which is whether this court has jurisdiction to consider the Bivens case on this appeal or the Bivens claim on this appeal. I certainly understand that there's an interlocutory right to appeal a qualified immunity decision, but as I understand it, it's a decision that is a question of law decision. And I'd like for you to address whether, and if we do that, I think there's authority for us to consider the underlying claim under the Wood case and our court's Tobey case. But is this a question of law that gives right to a proper Bivens appeal, or is it a question of fact? The question, the qualified immunity question about whether the defendants are adequately, yes, it's a question of law. It's a pleading question. It's a question of law, yes. Sorry. No, I mean, you're just not letting him finish. It's a question of law if you take the facts, taking the facts in the light most favorable to the plaintiff. I think that's the basis for his question. Right. It looks to me like most of the cases where there has been traditionally a qualified immunity claim is whether there is a question of the rights involved, whether you have a First Amendment right to a Bivens case or whether the TSA action constitutes a violation. This isn't questioning whether the Fourth Amendment would give rise to a Bivens action. I don't think there's any question about that. It's whether the complaint has sufficient pleading allegations. And my question is, does that give us jurisdiction to consider the underlying Bivens case at this point? It does, Your Honor. I think that's Iqbal. The Iqbal case from the Supreme Court precisely holds that there's a qualified immunity appeal. That was a pleading case, of course. We cite it all the time. That was a pleading case. And it says that if the allegations are insufficient and the district court holds otherwise, you can have a qualified immunity appeal. So I think that's directly controlling. And as I say, it's critical here that the clients are entitled to qualified immunity before discovery under Iqbal, but we don't know what they're alleged to have done, each specific one of them. Iqbal is really clear that to get past that hurdle of qualified immunity in a constitutional tort case, there must be allegations as to what each person is alleged to have done. I understand that we don't expect plaintiffs to have everybody's name and last name, but they could allege the tall one, the dark one, the blonde one, just something, really almost anything to separate my clients apart from what was clearly other people who were present at these incidents and have not been named as defendants. Because the entitlement to qualified immunity is very important for people. They're sued in their individual capacities. These are actual lawsuits against them that they have to defend and have lawyers and be embroiled in. So if there is a right to qualified immunity at the pleading stage, that's a very important right that they should be able to exercise, Your Honors. Let me ask you whether if we were to conclude hypothetically that there is no Bivens action here, that the Constitution doesn't create a damages claim in this context, is that jurisdictional or is that 12b-6? I think that would probably be 12b-6, but I'd just like to say that the question would probably not be whether the Constitution creates the damages claim. Under Abbasi, the question that we have to look at is who decides. It's not about whether a remedy is appropriate on these facts. It's about whether this court or the Congress should be the decision-maker. The Supreme Court phrased it just that way, saying that the courts can't create it. Congress would have authority to create it, but if Congress has never created it and somebody purports to allege it in a court, you're saying that's 12b-6. I think probably. I'm not certain that my clients are going to take a position or that the Justice Department have. But for the important question, I would say it's appellate jurisdiction and the qualified immunity. Well, that was going to get to my next question, if it's 12b-6. Is it intertwined with the qualified immunity? Well, Wilkie is fairly clear that if you have a jurisdictionally proper qualified immunity appeal, then you can address this question. That's that footnote in Wilkie, I think. Well, we may be, Ann, because we don't address everything that's in the case. The qualified immunity gives us authority to address that on an interlocutory basis. Correct. And the question is, what else can we address? And I think we have said something to the effect that if the other issue is intertwined with this issue. That's why I was asking you these questions. Yes, and I'm not sure that I'm really authorized to give you an answer on the government's point of view on the question of whether it's jurisdictional or whether it's 12b-6. No, I understand that, Your Honor. So, you know, our position is that there is a jurisdictionally proper qualified immunity appeal under Iqbal and that this Court can, you know, I don't know about the others, but this Court certainly can consider the question of whether Bivens relief is available also. Let me ask one more question. You responded to Judge Duncan's question earlier about the distinction between the citizen plaintiff and the non-citizen plaintiffs. Without deciding anything but hypothetically, if we were to think there is a difference in there, would it be appropriate in your view for, even if we could include the citizen's claim, to draw a distinction between the two? In terms of the qualified immunity? In terms of whether the Bivens action exists. Your Honor, our argument is that you should not, but obviously you're the Court and you may conclude if you think there are special factors, you may conclude that in the case of the citizen they don't counsel hesitation. But I thought your argument was context. It is context, Your Honor. If it's context, what difference does it make? If this is an effort by ICE to enforce the laws involving immigration, it seems to me the Supreme Court in Abbasi was pretty clear. They said even if the circumstances are the same conduct involved in, say, a drug case, the different context, they said they wouldn't even decide Bivens this way again today. It's such hostility to Bivens in this Abbasi opinion. And so the question is they're looking for anything, anything to justify it. So your argument would have to be, if you're going to be consistent, is that the context in the course of searches and seizures conducted under the INA is a different context than searches and seizures conducted under the drug laws. That's absolutely correct, Your Honor. All I'm suggesting is that, and that is our argument. That's your position. That is our position. You're recognizing that there are differences in special factors.  All right, thank you. Thank you, Your Honor. Ms. Murphy. Mr. Zients. Thank you, Your Honor. May it please the Court. Not just before you get in. I don't want to interrupt you after. Do you agree that if Congress has not created a cause of action, if we were to conclude that here and the Supreme Court basically instructed courts shouldn't be getting involved, is that jurisdictional? Does that go to our power, or is that a 12B6 type of thing? No, Your Honor. I think that's a 12B6 question. Essentially, is there a cause of action is, I think, generally regarded as a 12B6 question. Where do we get our jurisdiction? Your Honor, this is, you know, the jurisdiction I think comes from it being a qualified immunity setting. I think if it were not for, I think, a footnote in Wilkie, we might have been here arguing that it is not appropriate to consider the Bivens question at this time. Given that, I think it has been interpreted by other courts, we've not pressed that issue. And, of course, it's for Your Honors to decide. I don't mean to get ahead of you in your argument, but I would appreciate it. If you would pay particular attention to the citizen-noncitizen distinction, especially in the context of the special factors, and also the particular argument about the lack of identification with respect to the specific defendants. You are going to get there anyway, I'm sure. Yes, Your Honor. And in the order in which you choose. I just wanted to highlight that. Your Honor, I will absolutely address both of those points. My instinct is to go right to what you asked. No, I really would prefer that you do it in the order that best suits your argument. The only thing I would say is because your first question is about the special factors, my first argument is we don't get to special factors. Judge Niemeyer, you mentioned how the Supreme Court was very clear in the Ziegler v. Abbasi decision, and certainly it was. But one of the things it says, it said, this is how it described the square holding of Bivens. The court held that it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable searches and seizures. And a few pages later the court said specifically it was not casting doubt on the necessity of Bivens, the correctness of the Bivens decision, quote, in the search and seizure context in which it arose. So I think we have a very clear. I've read the opinion a couple of times, and it seems to me as much as it gives it takes away. It talks about the same conduct in a different context. It looks basically for virtually anything, including the fact that they're not even sure Bivens is on sound ground, and they said today we probably wouldn't decide Bivens. So there is an enormous caution flag, and they do not, they did say that when they talked about Bivens. That was the setup for the following discussion. But the following discussion took away almost all of that and saying basically that's irrelevant if you can find something to get it out from under Bivens direct holding. And it may be Bivens is so narrow that it only applies to the particular law being enforced in Bivens. Right, Your Honor. So I think in terms of whether the court would have decided Bivens the same way, certainly, and whether that's the case or not, certainly the Supreme Court said we are not questioning the vitality of Bivens, the necessity of Bivens. And yes, the court was quite, has instructed lower courts to be quite vigorous in making sure Bivens is not readily extended to new contexts.  enforcement conduct enforcing a different law. And Bivens itself was about the Federal Bureau of Narcotics, an agency that doesn't exist anymore, enforcing the drug laws. So I think the implication of defendant's position is that if an FBI agent were enforcing federal gun laws and engaged in the exact same illegal search and seizure as was the case in Bivens. It may not. It may not. Does the class of plaintiffs bear on whether this is a different context to Judge Duncan's point about the citizens and non-citizens? I'm not aware of a Supreme Court case upholding a Bivens action related to undocumented immigrants. Are you? Your Honor, immigration status is not part of this appeal. And I would note that the court has, I agree, the Supreme Court has not held that aliens have a Bivens remedy. Certainly there's no claim that they don't have the rights in question here. And the Supreme Court has suggested Sosa versus Alvarez-Machin. Just recently in Jennings versus Rodriguez, this past term, the court sort of noted the possibility of a Bivens case as a remedy for individuals in immigration who suffer mistreatment in immigration detention. So certainly the Supreme Court has not ruled it out. And if anything, it has suggested that there is no such distinction. So you don't think that's a proper factor to consider, either in context or in special factors? Your Honor, I would say that the context of this, in our view, is federal law enforcement officers engaging in searches and seizures. And, in fact, I don't know that it has to go narrower than that. But if you look in particular at warrantless invasions of a home, warrantless searches of a home, that is exactly what Bivens was and it's exactly what we allege now. Do you think this is a stronger argument, from your point of view, on the new context, in the new context posture, than the special factors posture? Your Honor, I think they're both strong. It's sort of logically first. I understand it's a logical next step. But the Ninth Circuit, for example, decided that it wasn't a new context and didn't need to get to that. It looked at that as well. Does that put us on a collision course with any other circuit? No, Your Honor. I think there are decisions. The Ninth Circuit decided a very different type of case. It declined to find it a new. Yeah, I'm sorry. Go ahead. Sure, and the Ninth Circuit has recognized Bivens' remedy in an immigration setting recently. It has also declined to create a Bivens remedy in the context of a challenge to prolonged immigration detention. But we're talking about a very narrow case. We are not suggesting that anything that happens in the immigration system to an alien gives rise to a Bivens claim. This is something that happens before. All of this conduct happens before anyone is in immigration detention. It's all subject to ICE enforcement, immigration enforcement efforts. Where do you draw that line? Your Honor, the line that I would draw is, you know, under federal law and regulation, immigration removal proceedings begin with a notice to appear in immigration court. In this case, of course, the U.S. citizen plaintiff is not in immigration court. But that can't happen until this form is filed, which is all after the events in question. So, yes, the agents here happen to be enforcing immigration law. It's not quite so simple, I don't think, to say they're sort of part of a removal proceeding. ICE enforces criminal laws as well. But the INA has provisions that describe what ICE agents can do regarding interrogation and arrest without a warrant. So pre-commencement of removal proceedings is part of the ICE regulations, aren't they? Your Honor, I think it's actually instructive what Congress says in terms of, you know, the pre-detention, pre-removal proceeding world versus after. You know, in removal proceedings, there are very detailed regulations and rules and remedies, et cetera. I think what you have with the government is, excuse me, what defendants have pointed to in terms of the arrest and questioning authority is basically what any federal law enforcement agency has because otherwise you don't have the authority to carry a gun and go around and arrest people. So the statute that they point to, there's a very similar statute for the FBI, for the DEA, for ATF. You know, if it wasn't for that, the federal law enforcement officer wouldn't have the authority to make arrests. So I think the existence of arrest authority is quite different from the sort of reticulated remedial scheme that you see perhaps, you know, post-detention in the removal proceeding itself. One of the concerns that I have, and it crops up, you're very careful not to characterize this as a challenge to a policy. Yes, Your Honor. And yet your brief reads as such. And we do know that Bivens is not available to remedy policy concerns of the kind that seem to animate your brief. Your Honor, I think, you know, if that's the impression from our brief, perhaps I can correct it. We are not challenging a policy. Paragraph 79 of the amended complaint, at page 44 of the appendix, alleges that what happened here is against the instructions for ICE agents in their training manual. We are challenging conduct that is both unconstitutional and, we allege, is contrary to ICE policy. But you just referenced your amended complaint, and not only is Judge Duncan's comments about the brief, I think, relevant to this, but the original complaint. Now, I know that's been amended. Is it your position that we cannot consider that in any way, shape, or form as to whether this is an attack on policy? Your Honor, that is my position, but I would say even if you disagree. You know, I think it's sort of black-letter law that a superseded complaint is no longer operative. It may be, but in civil litigation, you can use a complaint that has been amended as a party admission. And so to somehow suggest that complaint evaporates from the case in every way, I think, is probably a stretch. Your Honor, I think that tends to come in later, not on a 12b-6, as a matter of sort of an evidentiary admission. No, it's an admissibility question. But that and judicial notice, I think, give us – it's kind of to the point that whether we can consider it at all. Right. But, Your Honor, I don't want to fight too hard on this because I don't think it really hurts us if you do look at the original complaint. You know, there are a couple of paragraphs that describe, you know, what is put in the original complaint as sort of, you know, more freedom of action for ICE agents, quote, taking off the leash. You know, nothing about that. But isn't that a new context, a new class of defendants, a new remedy scheme? Those are the three areas that the court – there may be more, but those are at least three areas the court has said Bivens don't extend to. It said – it says it doesn't extend to any new context, any new category of defendants. In a related way, if there is an alternative remedial structure present in a certain case, then that alone may limit the power. In other words, it doesn't fall under Bivens. Your Honor, I go back to my point that when I was talking about new categories of defendants. We recognize a damages remedy requires an assessment of its impact on governmental operations system-wide. And you're talking about the manual, the INA manual? That's illegal. Your allegation is that that was an illegal search? No, absolutely not. We're not saying that the manual is illegal. We're saying that they violated the manual. Well, that's my point. They violated the manual is a challenge to a system-wide, governmental system-wide, in the immigration context. Your Honor, we're challenging what happened at two homes on two mornings in Virginia, and not a policy. But they were ICE agents, and these were people who were suspected of being here illegally. I mean, this was an effort to find illegal, undocumented aliens, right? Your Honor, we've alleged that there was absolutely no reasonable suspicion to stop or search or seize these individuals. You've alleged search and seizure violations in the Fourth and Fifth Amendments. There's no question about that. But that stated alone would bring you under Bivens, as you quoted it even in Abrasi. But the rest of the opinion then says we're going to keep that mighty narrow. And you and I have read the same stuff. Your Honor, I absolutely agree that it is narrow. But what was asked to be recognized in Abrasi, you know, the context there was a specific reaction at a high level to 9-11. In the country, any circuit court, has any circuit court in the country applied Bivens in the context of an INA enforcement? I'm aware of the opinions in the Fifth, Ninth, and Eleventh Circuits. Are there others? Those all go, apparently go against you. Well, Your Honor, I think it's a little bit more subtle than that. It is more subtle than that. I take your point. It is more nuanced than that. In the Ninth Circuit, granted relief, but it sort of extended Bivens while declining to find that a new context was presented. Yeah, I think in Lanuza in the recent decision. Rodriguez? Oh, sorry. So Rodriguez was the cross-border shooting case where the court found, I think, that there were no special factors that counseled hesitation. Lanuza was another recent case that involved forgery by an immigration officer in immigration proceedings. Let's go back to the original question. Is there a court that has created a Bivens action with respect to ICE conduct under the immigration law? District courts have. I think this hasn't come up in precisely this context very often with the types of allegations that we had. The Fifth Circuit, I think, is the only circuit that has actually suggested that an unconstitutional search and seizure would not be within a Bivens remedy. Even then, that was a highway stop and not a warrantless search of a home. And even then, a subsequent Fifth Circuit en banc decision in Hernandez had language in both the majority and dissent suggesting that they were not suggesting Bivens is not available for immigration officers. If I could quickly just answer two points. One, Judge Quattle, I don't think I ever finished my response about the policy question. Even in the original complaint, yes, there is a description of the background in which ICE was given more freedom of action. Even in that complaint, we still included an allegation that the specific conduct we were challenging was against ICE training manuals. So I think even if you look at that original complaint, we are just not challenging policy. We are challenging essentially rogue action by individual officers at two sites in Virginia on two different February mornings. Judge Duncan, you asked me to talk about the identity issue, and I don't want to not come back to that. I think your question to defendants' counsel was a good one, which was how could we know more? What we have alleged is that this team of officers was operating as a team. We've also alleged that some of these names, I think, you know, defendants say, well, there must have been more officers there, so perhaps only some of the officers were engaged on constitutional conduct, and how do we know? You know, we tried to plead this carefully on the basis of the information that we had, which included names that were disclosed in specific forms. You know, that's how we got these names. This could have been, frankly, I don't think they could have been making this argument that they're making now. If we had just alleged John Doe, 1234567, you know, we've done more, and I don't think it would be right to essentially penalize plaintiffs for doing more. The allegation here, I just don't think it's correct to say that these defendants don't have notice of what they're alleged to have done. This was a group that we allege was operating as a team. If you look at some of the facts, for example, of Arlington, you have several ICE agents essentially backing a plaintiff into the house, forcing him to open the house, you know, fanning out. It's true, we don't know which two went to the second floor, which two went to the bottom floor. You know, one of the reasons for that, you know, Mr. Carcamo, who's the U.S. citizen, his wife tried to film this, and they essentially pushed her and made her stop filming. You know, that could have helped include more facts. So I think the plaintiffs here really have done all they're able to do. You hadn't talked about the Fifth Amendment claim. Do you maintain that at this point? I mean, I know there's a Fifth Amendment claim related to due process, but I don't think there's been a Fifth Amendment crime related to equal protection under Bivens. Are you still pursuing that claim? Your Honor, we're pursuing that claim. I would say that it doesn't add. I think, you know, what we have on the Fourth Amendment claim is such a clear application of Bivens and the way that Abbasi describes the core holding of Bivens. I think once it, you know, if you conclude that this would be an extension of Bivens, one, I think it would be an extraordinarily modest extension, which is what Judge Stranger recognized, and that all of the reasons that there was no special factor counseling hesitation in Bivens would apply here. I think there the Fifth Amendment claim is so close to the Fourth Amendment claim. Essentially, the way I would think of it is the Fourth Amendment claim is you conducted this search and seizure for no reason. You know, the Fifth Amendment claim just goes further and said actually you conducted it for an invidious reason. Not only did you have no suspicion, your only basis for suspicion was impermissible grounds of race and ethnicity. But ultimately, the Fourth Amendment, I think, is a quite straightforward ground. Your Honor, of course, if you conclude, if you conclude, I don't think this is a new context. If you conclude it is, it remains the case that you do need to consider. The Supreme Court hasn't said new context, that's the end. They said, you know, be cautious, but you should still consider it. And so, for example, you're supposed to look at, you know, what are the alternate remedies. And there's really none in particular for the U.S. citizen plaintiff, but even for the other plaintiffs. It's not just look at alternative remedies. It's look to whether there were situations where remedies could have been provided and weren't. And we've covered that already, and so I don't want to debate that. But it's a little broader than whether you have equal remedies or not. Right. It's, if I can answer your question, I see my time is up. You know, the question is, you know, did Congress by acting basically suggest that there's no room for courts here at this point? You know, Congress has never overruled Bivens. It has recognized its availability in this core search and seizure Fourth Amendment context. And so when you look at the INA, I do think you could really sharply contrast, you know, the types of remedies and the types of procedures that Congress created in the INA for the removal proceeding and the very general grant of essentially arrest and interrogation authority for ICE agents that is basically on par with FBI agents, DEA agents, ATF agents. And we'd suggest that, you know, this is just what Abbasi said. You know, Bivens may be limited, but it is limited to this. Thank you, Your Honor. All right. Thank you, Mr. Zients. Ms. Murphy. Your Honor, my co-counsel, Mr. Werner, kindly reminded me that in Hernandez, that we decided almost the same day as Abbasi, the Supreme Court addressed the question of whether the special factors inquiry is intertwined with a qualified immunity inquiry, and it said that it was. So that case should be instructive. And I'm sorry I didn't answer your question correctly the first time. Your Honor, one of the things that makes a new context a new context under Abbasi is just the presence of special factors that have never been considered in a Bivens case. So pretty obviously immigration is a factor here. It wasn't in Bivens. Counsel's correct. All that happens if there's a new context is that the court looks at the factors. It's just a threshold thing. Abbasi could hardly be more clear about how it's easily satisfied. A modest extension is still an extension. And the only other thing I'd like to say is that this really isn't a narrow claim. These are the kinds of allegations that could be made against any immigration agent. You arrested me, and I wasn't the particular person that you were saying you were looking for, and you did it with no basis because of my race or national origin. So this is not a narrow case. This is a really extraordinarily broad case, and it is policy-based. And, you know, there's a cause of action for an injunction against the government. If a government policy is, you know, if somebody wants to challenge it, then challenge the government and don't bring a Bivens action, you know, against the individual employees doing their jobs. So one point, at least as alleged, this conduct is a pretty flagrant violation of the Fourth Amendment. What do you say to the argument that if you do away with Bivens, there's no disincentive for this type of alleged action? Well, there are disincentives, to be honest. Really egregious constitutional violations may often be crimes like in Lanusa or in Rodriguez, again, suits against the government. The Court Claims Act? Yeah, or injunctive relief. There's internal disciplinary procedures that can be brought to bear. And how would they be initiated? I mean, I share Judge Quattlebaum's concern. This conduct does appear to be egregious. What serves as a deterrent in the absence of a damages remedy?  Then it's needed, according to the complaint, more or less against the whole government, and that's a policy decision for Congress. I understand that Bivens is a deterrent, but it's also true that under Abbasi, we're not going to necessarily look at the allegations. Are the agents obligated to engage in behavior of this type when the allegation is that it is contraindicated by the manual? Yeah, I understand the procedural posture. I understand that we have to accept all of the pleadings as true, but it is nonetheless true that when we're not resting the pleadings, my clients have defenses. And I understand that you're looking at egregious allegations and it's plaintiff's job to make them as egregious as possible. All I can say is if they really object to the way that ICE is conducting itself, they need to sue ICE rather than the individuals. Plaintiffs are under a rule of, I mean, I realize it's an advocacy-based system. You know, we're all in it, but, I mean, that response suggests they were being disingenuous and they have Rule 11 obligations, and at this stage of the proceeding, we're trying to see if there is any disincentive or deterrent, which the courts have indicated is at least a factor to consider, I think. Yeah, Your Honor, I in no way meant to suggest that plaintiffs were disingenuous, only that at this procedural stage, their obligation is to state a claim, and at this procedural stage, if we move to dismiss the complaint, we can't say things like, but, you know, we had consent, we had probable cause. So that's all I meant to say.  Thank you, Ms. Murphy. Thank you. We'll come down to Greek Council and take a short recess. This Honorable Court will take a brief recess.
judges: Paul V. Niemeyer, Allyson K. Duncan, A. Marvin Quattlebaum Jr.